71 So.2d 88

**CLAYBROOKE WAREHOUSE & GIN CO.**

v.

**FARMERS COOPERATIVE WAREHOUSE & GIN CO.**

8 Div. 721.

Supreme Court of Alabama.

March 18, 1954.

Scruggs & Scruggs, Guntersville, for appellant.

H. G. Bailey, Boaz, for appellee.

STAKELY, Justice.

This is a suit for the conversion of cotton seed during the month of December 1950. The defendant filed a plea of the general issue. There was verdict and judgment for the plaintiff and hence this appeal.

The only witnesses in the case were the two witnesses put on the stand by the plaintiff. The first witness for the plaintiff was E. B. Jenkins. His testimony was in substance as follows. He was the manager of the plaintiff and familiar with their transactions. In December of 1950 or January 1951, he discovered that there was cotton seed missing from the Smith Institute Gin in Etowah County, a gin owned by the plaintiff. The Smith Institute Gin stored seed in a seed house which was built off the ground high enough for a truck to run under and load seed by opening the doors. He found that these doors which had been nailed up had been torn into and cotton seed scattered on the ground where seed had been loaded. The foregoing was the extent of his testimony, except testimony showing the value of the cotton seed. Since there is no question with respect to the value of the cotton seed on this appeal, we will not state that phase of his testimony.

The other witness for the plaintiff was one Owen Patton. He testified in substance as follows. In December 1950 he got some cotton seed out of a storage house at the Smith Institute Gin Company in Etowah County. He drove his truck under the seed house in the night time and got a load of about 4 tons on December 21, 1950, from that gin. He took the seed to Mr. Claybrooke at Albertville, Alabama, and sold the seed to him. On the night of December 22, 1950, he stole another 5 tons of seed from the Smith Institute Gin Company, using the same truck he had used before. He also carried this seed and sold it to Mr. Claybrooke. He sold both loads of the seed to Mr. Claybrooke in the day time, who bought them from the witness in the regular course of business. He did not tell Mr. Claybrooke that he had stolen the seed. Mr. Claybrooke paid him by check $480 when the first load was delivered and $440 when the second load was delivered.

The witness was convicted and sentenced to the penitentiary for grand larceny for these thefts and at the time of the trial was out on parole.

We have stated the testimony in the case in detail. So far as the defendant is concerned, the defendant purchased the seed in the regular course of business without knowledge that the seed had been stolen. But he took possession of the seed from the witness Owen Patton and paid him for it. There is no proof that prior to the institution of the suit or at any time for that matter, there was any demand made by the plaintiff on the defendant for the seed or any refusal on the part of the defendant to turn over the seed to the plaintiff.

The pivotal question in the case is the ruling of the court in refusing the affirmative charge requested in writing by the defendant. It is insisted by the appellant

that the affirmative charge should have been given since there was no proof prior to the institution of the suit of a demand and refusal. In the case of Glaze v. M'Million, 7 Port. 279, this court held that all conversions may be divided into four distinct classes. "1. By a wrongful taking: 2. By an illegal assumption of ownership. 3. By an illegal user or misuser. 4. By a wrongful detention." The court said:

"In the first three named classes there is no necessity for a demand and refusal, as the evidence arising from the acts of the defendant, is sufficient to prove the conversion. In the latter class alone, is such evidence to be required, as the mere detention of a chattel furnishes no evidence of a disposition to convert it to the holder's use, or to divest the true owner of his property."

The court further said:

"It is admitted, that an innocent finder of property is not liable to this action, unless he assumes to be the owner, illegally uses or misuses, or detains the property after demand by the owner; and yet if the property has been stolen, or illegally acquired by a wrong taker, it may, notwithstanding, come to the possession of another, without any fault; and if so, he cannot stand in a less favorable light than a finder."

In the foregoing case the evidence did not disclose how the defendant obtained possession. It was held that a demand and refusal prior to the institution of the suit was necessary.

In Geneva Gin & Storage Co. v. Rawls, 240 Ala. 320, 199 So. 734, this court had under consideration a case where the suit was against the purchaser of personal property from a thief. The court shows that a person who has stolen the goods of another can not pass any title thereto to another, whether such another knew or did not know that the goods were stolen and further that when the thief stole and delivered the property to a purchaser and

the latter received and undertook to assume dominion over the same, both became joint tort feasors and both liable jointly in an action of trover, the purchaser being jointly liable without regard to whether he had prior knowledge of the fact that the property was stolen.

■ In the case at bar when the defendant took possession of the cotton seed and paid for it he necessarily exercised dominion over the property in defiance and exclusion of the rights of the true owner. It is true that at that time the defendant bought the cotton seed in good faith and paid fair value for it, but it is also true that where goods are sold by a person who is not the owner and who does not have authority of the owner to sell, the buyer gets no better title than that which the seller has. § 29, Title 57, Code of 1940; Geneva Gin & Storage Co. v. Rawls, supra; Boutwell v. Parker, 124 Ala. 341, 27 So. 309.

■ The taking of the property of the plaintiff under the evidence in this case was in a legal sense wrongful and so the assumption of dominion over it in subversion of the rights of the plaintiff was conversion and, therefore, no demand was necessary. Meador v. Evans, 188 Ala. 229, 66 So. 446.

■ At first thought it may seem unsound to say that one who takes possession of goods under a contract of purchase from one who had no right to sell, should be treated as a wrong-doer, but the explanation of the principle lies in the common law maxim *caveat emptor,* which applies to the transfer of personal property. It is the buyer's own fault, if he is so negligent as not to ascertain the right of the vendor to sell, and he cannot successfully invoke his bona fides to protect himself from liability to the true owner, who can only be divested of his rights or title to his property by his own act, or by the operation of law. Every person is bound at his peril to ascertain in whom the real title to property is vested and however much diligence he may exert to that end,

he must abide by the consequence of any mistake.—Velsian v. Lewis, 15 Or. 539, 16 P. 631, 3 Am.St.Rep. 184.

In Freeman v. Underwood, 66 Me. 229, 233, the court said:

"But the defendants by the purchase and possession of the berries, although acting in good faith and in ignorance of the want of title in their vendors, assumed thereby an ownership and exercised a dominion over the property, which rendered them liable in trover to the true owner, without any demand therefor."

In Hyde v. Noble, 13 N.H. 494, 38 Am. Dec. 508, it is said, "It is only where the party obtains the possession lawfully that it is necessary to show a demand and refusal."

In Bowers on The Law of Conversion, p. 255, it is said:

"In Stanley v. Gaylord, 1 Cush., [Mass.], 536, 48 Am.Dec. 643, which is a leading case, it was held that a bona fide purchaser from one who had the actual possession of property, but without any right to retain the property as against the lawful owner, by his actual taking of it under such purchase into his custody would thereby subject himself to an action of trover at the suit of the lawful owner without any previous demand for the possession."

See also, The Law of Conversion by Bowers, p. 259; Boutwell v. Parker, supra; Bolling v. Kirby, 90 Ala. 215, 7 So. 914; Geneva Gin & Storage Co. v. Rawls, supra; Rosum v. Hodges, 1 S.D. 308, 47 N.W. 140, 9 L.R.A. 817.

We conclude that the court acted correctly in refusing to give the affirmative charge at the request of the defendant.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.